FILED

2011 Feb-15  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REGINALD D. LEE,          ]
                              ]
      Plaintiff,          ]
                              ]
      vs.                ]   2:09-CV-01350-LSC
                              ]
UNITED STATES STEEL CORP.,    ]
                              ]
      Defendant.     ]

MEMORANDUM OF OPINION AND ORDER

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, United States Steel Corporation ("U.S. Steel"), on September 30, 2010. (Doc. 20.) Plaintiff, Reginald Lee ("Lee"), sued Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991; 42 U.S.C. § 1981 ("§ 1981"); and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et. seq.* (Doc. 3.)  U.S. Steel moved for summary judgment on all of Plaintiff's claims.  The issues raised in Defendant's motion for summary judgment have been briefed by both

parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented by the parties, U.S. Steel's motion for summary judgment will be granted in all respects.

II.    Evidentiary Motion.

As a preliminary matter, the Court will address Defendant's motion to strike portions of the declarations of William Jackson ("Jackson") and Reginald Lee.  (Doc. 30.)  U.S. Steel identifies each paragraph number they want stricken from the record and argue that the testimony is hearsay, speculation, not reasonably based on personal knowledge, irrelevant, conclusory, lacking in evidentiary support, improper opinion evidence, and/or inconsistent with prior deposition testimony.  For the reasons below, Defendant's motion to strike is DENIED.

The Court has reviewed Defendant's allegations that statements in Lee's declaration conflict with prior deposition testimony, and the Court has not found any *material* inconsistencies.  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation,

previously given clear testimony." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984).   The contradictions alleged by the defendant do not meet this standard.

To the extent U.S. Steel argues that a declarant's testimony is hearsay, conclusory, irrelevant, lacking personal knowledge, or otherwise improper, the Court has noted and considered these characterizations. Many of Defendant's objections are well-founded.   However, it is unnecessary to strike the disputed testimony from the record.   The materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process. Immaterial evidence, irrelevant evidence, and other evidence that could not be reduced to admissible form at trial, *see Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by the Court when making its final decision on Defendant's motion for summary judgment.

III.   Facts.[1]

Plaintiff Reginald Lee, an African-American male, began his employment at the Fairfield Works of United States Steel Corporation on March 13, 2006.  Lee initially worked in the Finishing Department at the Sheet Mill.  He later moved to the Cold Mill Department, where he served as a Utility Person, Labor Grade 1.  In the Cold Mill, Kevin Henson ("Henson") was the Area Manager; Ralph Self ("Self") was the Coordinator; and Charlie Lacey ("Lacey"), David Hovator, and John Vincent worked as Shift Managers.

Shortly after starting work at U.S. Steel, Lee joined the United Steelworkers of America ("USWA"), which represents the bargaining unit employees at the Fairfield Works.  A Basic Labor Agreement ("BLA") governed many of the terms and conditions of Plaintiff's employment.  The BLA included a grievance and arbitration provision, as well as an explanation

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

regarding family medical leave ("FML").  Lee received a copy of the BLA from his union representative.

The Cold Mill Department has an Absenteeism Policy.  Under the Absenteeism Policy, an unexcused absence occurs when an employee fails to work all or part of his/her scheduled shift for any reason other than: vacation, paid jury or witness duty, paid funeral leave, service with the armed forces, union business, an extended absence confirmed by a medical certificate, an excused shift by a process leader, or other absence substantiated with documentation acceptable to management.   An employee is also charged with an unexcused absence if they accrue three "tardies."  The Absenteeism Policy provides that on the fifth unexcused absence, written notification will be provided to the employee and union. On the sixth unexcused absence, the employee receives counseling.  Further unexcused absences will result in progressive discipline.  However, the Absenteeism Policy also includes a provision that notes these guidelines "will not detract from the pre-existing rights of the company to discipline employees for absence from work without just cause, failure to properly

report off, tardy, leaving your work area without proper relief, etc." (Doc. 22, Ex. 8.)

Self testified that on June 10, 2008, Lee requested vacation for June 19th through the 22nd. According to Self, Lee told him that he already had airline tickets and really needed to have those days off. Self asked Henson about Lee's request, and Henson informed him the request could not be granted because three other employees were scheduled for vacation that week. Lee denies that he ever asked Self for vacation at these times.

On June 12, 2008, Self posted the work schedule for the following two weeks. Lee was scheduled off on June 17th and 24th; he was scheduled to work June 18th through the 23rd. Self testified that after the schedule was posted, Lee pointed out that he was not scheduled for vacation on the 19th through the 22nd. Self informed Lee that his vacation request was denied. Lee denies that this conversation occurred or that he ever made the alleged vacation request.

On June 18, 2008, Lee called in and reported that he was sick. He informed a supervisor that he had injured his back and would be off for a couple of days. Lee returned to work on June 25, 2008. At that time, he

presented shift manager Lacey with an excuse from Middle Creek Medical Center.  The excuse stated that Lee was seen on June 18th and 24th and could return to work on the 24th.  Lee testified that when he handed Lacey the excuse, Lacey asked him about Las Vegas.  Lee acknowledged in his deposition that a rumor had started in the mill that he had gone to Las Vegas while he was off work.

Self heard the Las Vegas rumors.  When Self turned Lee's medical excuse over to Henson, he told Henson that he believed the document was falsified.  Self reported to Henson that he had a conversation with Lee where Lee had requested the time off for vacation and said he had already purchased airplane tickets.  Thereafter, Henson met with his supervisor, Coleman Kelly ("Kelly"), and David Coombes ("Coombes") from Labor Relations.  Together, Kelly, Henson, and Coombes decided to issue Plaintiff discipline.

On July 2, 2008, Lee was suspended for five days, subject to discharge. He continued to work under the justice and dignity provision of the BLA.  A preliminary disciplinary hearing was held on July 8th.  At the preliminary hearing, Self testified that Lee asked him for vacation during the time at

issue and told him that he already had airplane reservations.  Lee denied Self's account and denied asking for vacation.  Coombes asked Lee if he had traveled between June 18th and 24th.  Lee replied: "No more than personal business that I normally do."  Coombes told Lee that it was a yes or no question and asked if Lee traveled out of state between the 18th and 24th.  Lee responded: "I traveled for my personal business."  (Pl. Dep. at 127 & Pl. Ex. 8.)

At the preliminary hearing, Lee agreed to release his medical records to U.S. Steel for the time period in question.  The medical records included three excuses.  One excuse, dated June 18, 2008, indicated that Lee was treated on June 18th and could return to work on June 20th.  A second excuse, also dated June 18, 2008, said that Lee was treated on June 18th and could return to work on June 22nd.  The third excuse, which Lee presented to Lacey, was dated June 24, 2008, and indicated that Lee was seen on June 18th and 24th and could return to work on June 24th.

Henson testified that it was his determination that Lee's answers at the preliminary hearing were evasive, and he believed the number of days Lee was absent was not covered by his excuses.  (Henson Dep. at 61.)

Henson, Kelly, and Coombes converted Lee's suspension to a discharge, effective July 14, 2008.  (*Id*. at 34.)  USWA then filed a grievance on Lee's behalf.

A "Second Step" meeting was held on July 25, 2008, as required by BLA procedures.  Again, Lee denied that he ever had conversations with Self about taking vacation in June 2008.  Coombes repeatedly asked Lee about his whereabouts during the time in question.  Lee responded: "I didn't do anything other than my own personal business."  (Lee Dep. at 136.)  When Kelly and Coombes became irate with Lee's answer, Lee became silent and refused to say anything more.  (*Id*. at 135.)

Following the Second Step meeting, Henson, Kelly, and Coombes decided to issue discipline to Lee for providing false testimony.   Lee received another five-day suspension, pending discharge.  On October 30, 2008, an arbitration was held pursuant to the BLA.  The Board of Arbitration ultimately found that Self testified credibly regarding his conversations with Lee and upheld U.S. Steel's disciplinary decision.

IV.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

V.   Analysis.

    A.   Race Discrimination.

Plaintiff contends that he was discharged from his employment with U.S. Steel because of his race, in violation of Title VII and § 1981. Because Lee has not presented direct evidence of race discrimination in connection with his termination, we analyze his claim using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330-31 (11th Cir. 1998) . First, the plaintiff must establish a prima facie case of

discrimination.   A plaintiff establishes a prima facie case of race discrimination by showing: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Id.* (citing *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)).

Once a plaintiff has established a prima face case of discrimination, "the defendant can rebut by offering a legitimate, non-discriminatory reason for the allegedly discriminatory act." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).   This burden is "exceedingly light . . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.* (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)).   "If the defendant successfully rebuts the

plaintiff's prima facie case, 'the presumption of discrimination is eliminated.'" *Id.* (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)).  In order to survive summary judgment, the plaintiff must then "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (quoting *Chapman*, 229 F.2d at 1024).

With regard to Plaintiff's prima facie case, U.S. Steel does not dispute that Lee belongs to a racial minority, he was subjected to adverse job action when his employment was terminated, and he was qualified to do his job. Defendant argues, however, that Lee cannot prove that similarly situated white employees were treated more favorably.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004).  "In determining whether

employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* "The most important factors in the disciplinary contexts are the nature of the offenses committed and the nature of the punishments imposed." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 535 U.S. 1013 (2002) (ellipses omitted). "In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Id.* (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)); *see also Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) (reaffirming the "nearly identical" requirement despite one panel's conclusion that only "similar" misconduct is required). It is "require[d] that the quantity and quality of the comparator's misconduct be nearly identical." *Maniccia*, 171 F.3d at 1368. "If a plaintiff fails to show the existence of a similarly situated employee, summary

judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562.

U.S. Steel has presented evidence that Lee was fired for being absent without just cause, being evasive in response to questions about his absence, and providing false testimony. The record shows that Self told Henson and other members of management that Lee asked him for vacation on June 19th through 22nd. Rumors circulated that Lee had gone to Las Vegas while he was off work. Lee's medical excuses indicated he visited the doctor on June 18th and 24th, and one excuse said he was able to return to work on the 22nd but he did not do so. When questioned in a hearing whether he traveled out of state between June 18th and 24th, Lee was evasive and answered, "No more than personal business that I normally do," and "I traveled for my personal business." (Pl. Dep. at 127 Pl. Ex. 8.) Moreover, Plaintiff testified that he never had conversations with Self about taking vacation in June 2008, and Defendant determined that this was a lie. Henson, Kelly, and Coombes ultimately issued Lee discipline and decided to terminate his employment.

Lee argues that Russell Snell ("Snell") is a non-minority employee who committed the same or similar conduct and was disciplined less severely. During the time period in question Snell also worked as a Utility Person, Labor Grade 1, in the Cold Mill Department.  Snell has supplied a declaration stating that he asked coordinator John Vinson ("Vinson") [2] for vacation June 13-15, 2008, because his daughter was getting married that weekend. According to Snell, he was told his request was denied.  Snell testified that he went to the managers' office and told Self, Vinson, and Henson that he was not going to miss his daughter's wedding, and he was going to do what he had to do to attend the wedding.  Snell was told that if he missed work, he would need a doctor's excuse.  (Snell Decl. ¶¶ 2-4.)  In his declaration, Snell represents that he "called off" sick on June 13-15, 2008, and when he came back to work, he submitted a doctor's excuse from his physician. Snell indicates that neither Self, Vinson, or Henson questioned him about missing work on June 13-15, 2008, or his doctor's excuse.  (*Id.* ¶ 4.)

---

[2]Elsewhere, the parties have referenced a coordinator "John Vincent."  The Court assumes this is the same person; however, that determination is not material to the outcome of this decision.

Plaintiff has submitted a doctor's excuse from Snell's file, dated June 5, 2008, which indicates that Snell was released to return to work on June 9, 2008.  (Doc. 24, Ex. 22.)  This excuse cannot be the one referenced in Snell's declaration because it has the wrong dates.   Attendance records show that Snell was absent for 8.0 hours due to illness on June 6, 2008, the period covered by the excuse submitted to the Court.  However, attendance records show that Snell worked on June 13, 14, and 15, 2008, the days he contends he missed for his daughter's wedding, and Snell was paid for working those days.   (Doc. 24, Ex. 21; Watson Decl. ¶ 25 & Ex. 5.) Defendant's records indicate that Snell was only absent for 1.6 hours on Saturday, June 14, 2008, "with permission."  (Doc. 24, Ex. 21.)  The Court cannot make credibility decisions at this stage of the proceedings, and all evidence must be viewed in the light most favorable to the plaintiff. Therefore, the Court assumes that Snell is telling the truth about missing work on June 13-15, 2008, attending his daughter's wedding, and presenting Defendant with a doctor's excuse for those days.

Lee, however, has not established that Snell's alleged misconduct is "nearly identical" to Plaintiff's conduct.  There is no evidence that Snell

was evasive about his whereabouts during his alleged absence or lied about requesting leave.  Because Plaintiff has failed to show the existence of a similarly situated employee, summary judgment is appropriate. Furthermore, as explained below, even if the Court assumes that Lee has established a prima facie case of race discrimination, he has not presented sufficient evidence of pretext.

"Once a plaintiff establishes a *prima facie* case in a disparate treatment action, the employer must provide a specific, legitimate nondiscriminatory reason for disciplining the employees differently." *Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999).  "Intentional discrimination is an issue of fact."  *Id*.

As a legitimate, nondiscriminatory reason for disciplining Lee and Snell differently, Defendant proffers that it believed Snell worked the days he says he missed.  (Doc. 31 at 9.)  This is a race-neutral reason, and Lee must offer sufficient evidence to create a genuine issue of fact as to pretext. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc). To avoid summary judgment, Lee must "either directly persuad[e] the court that a discriminatory reason more likely motivated the employer or

indirectly [show] that the employer's proffered explanation is unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  "Plaintiff bears the burden of proving that the employer intentionally discriminated against him because of his race."  *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).  A plaintiff must "meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Chapman*, 229 F.3d at 1030 (11th Cir. 2000)).  "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Obviously, Plaintiff submits Snell's testimony that Snell did take off work on June 13-15, 2008, for his daughter's wedding and did submit a doctor's excuse—though he does not name the person to whom he presented the excuse or describe what the excuse said.  However, "our inquiry is

limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). "Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information." *Id.* (quoting *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995) (Johnson, J., concurring specially). "[W]hen we evaluate a charge of disparate treatment employment discrimination, we must focus on the actual knowledge and actions of the decision-maker." Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1306 (11th 2002) (citing *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002)).

There is no evidence in the record that indicates any of the alleged decision-makers in this case were aware Snell did not work on June 13-15, 2008. In a statement that lacks foundation for personal knowledge, Snell maintains that Self, Vinson, and Henson "knew" he went to his daughter's wedding (Snell Decl. ¶ 4), but there is no evidence that his supervisors knew

he did not work.  There is no indication that attendance at the wedding physically precluded the ability to work on the days in question.  Plaintiff also has not presented any evidence that would indicate that receipt of the purported doctor's excuse would establish the decision-makers' knowledge that Snell actually did not or could not work on June 13-15, 2008. Moreover, there is no allegation or inference that Defendant was aware that other employees clocked in or out for absent employees, which might create a question of fact whether the clock in/out reports could be relied upon to determine attendance.

"Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 800 (11th Cir. 2000)).  Because there is no admissible evidence that the decision-makers in this case were aware that Snell did not work as required on June 13-15, 2008, in order to attend his daughter's wedding, there is no inference that Lee was disparately disciplined because of race.  Summary judgment will be entered on behalf of U.S. Steel with regard to Lee's Title VII and § 1981 claims.

B.      Family Medical Leave Act.

Plaintiff's lawsuit against U.S. Steel also includes a claim for wrongful termination under FMLA.  "The FMLA provides that 'an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1204 (11th Cir. 2001) (quoting  29 U.S.C. § 2612(a)(1)).  U.S. Steel does not dispute that it is an employer subject to FMLA or that Lee is an "eligible employee."

Under FMLA, a plaintiff can pursue two types of legal action: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  *Id*. at 1206.  Plaintiff contends that U.S. Steel is liable under both theories.  He argues that Defendant failed to follow federal regulations and its own internal FMLA policies, and terminated him for taking FMLA leave.

1.    Interference.[3]

"To state a claim of interference with a substantive right [under FMLA], an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied."  *Id.* at 1207. Defendant contends that Lee was not entitled to any FMLA benefits because he did not have a "serious health condition."

FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves–- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  A Department of Labor Regulation defines "continuing treatment by a health care provider" as including:

> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any

---

[3]U.S. Steel argues that the Complaint only includes a claim for retaliation under FMLA and does not state a claim for interference.  Because it is the opinion of this Court that Plaintiff has insufficient evidence to establish an interference claim and summary judgment is due to be granted, it is unnecessary to address the issue of whether such a claim was properly pled.

subsequent treatment or period of incapacity relating to the same condition, that also involves:

> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2).[4] "Regulations are given 'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1307 (11th Cir. 1999). The Eleventh Circuit Court of Appeals has expressly determined that this particular regulation is a permissible construction of FMLA, and held that "more than three consecutive calendar days" of incapacity means "72 hours or more." *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1344-45 (11th Cir. 2003). "Partial days do not count, except at the beginning or end of the

---

[4]Many of the regulations promulgated under FMLA were amended, effective January 16, 2009. Throughout this opinion, the Court will reference the regulations in effect during the time period at issue in this dispute.

'period of incapacity' in order to make up the 'more than' element." *Id*. at 1344.  The Eleventh Circuit concluded that this interpretation ensures that "'serious health conditions' are in fact serious, and are ones that result in an extended period of incapacity, as Congress intended." *Id*.

Plaintiff has presented insufficient evidence to convince a reasonable jury that he was incapacitated for over 72 consecutive hours.  While he argues he was "off work for more than three days due to a back injury," there is no expert or lay witness testimony establishing that Lee was actually unable to perform his work duties during scheduled work hours *and* unable to perform his other regular daily activities during non-work hours for the requisite time period.  In fact, Plaintiff testified that while he "pretty much" stayed around his home, he traveled for his "personal business."  (Pl. Dep. at 82, 127.)  Traveling included approximately two trips with his wife to pick up his goddaughter.  (*Id*. at 150.)  Because there is insufficient evidence of the requisite incapacity, Plaintiff cannot show he had a "serious health condition" that entitled him to benefits under FMLA.  Accordingly, Defendant is entitled to summary judgment with regard to Lee's FMLA interference claim.

2.    Retaliation.

In order to succeed on a retaliation claim under FMLA, a plaintiff must "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207.  "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id*. (quotation omitted).

"When evaluating a FMLA retaliation claim [in the absence of direct evidence], we use the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).  In order to establish a prima facie case, "a plaintiff must show that he engaged in statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action." *Id*.; *see also Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000).  "If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action." *BellSouth Telecomms., Inc.*, 273

F.3d at 1314. "If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual." *Id.*

Plaintiff admits that he never asked for nor applied for FMLA leave. However, he argues that he engaged in statutorily protected conduct under FMLA because he requested medical leave that qualified as FMLA leave because he had a "serious health condition." (Doc. 29 at 25.) As outlined above, Lee has not proffered sufficient evidence that he was entitled to any benefits under FMLA. Consequently, Lee cannot establish that he exercised an FMLA right. Summary judgment will also be entered in favor of the defendant with regard to Plaintiff's FMLA retaliation claim.

## VI.    Conclusion.

In accordance with the rationale outlined above, Defendant's motion for summary judgment will be granted in all respects. A separate order will be entered.

Done this <u>15th</u> day of <u>February 2011</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297